IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

RECEIVED IN CLERK'S OFFICE
U.S.D.C. Rome

AUG 1 7 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| CORY M. CONE, individually and on behalf of all others similarly situated, | § § § | Civil Action File No. |
| Plaintiff, | § § | |
| v. | § § § | **4:07 CV - 164**-HLM |
| HOOTERS OF HIRAM, LLC; HOOTERS OF AMERICA, INC.; HOOTERS ENTERPRISES, LLC; and DOES 1 through 10, inclusive, | § § § § | CLASS ACTION  ORIGINAL |
| Defendants. | § § § | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW, CORY MICHAEL CONE, ("Plaintiff"), on behalf of himself and all others similarly situated, and files this Class Action Complaint, alleging as follows:

## INTRODUCTION

1.    In 2003, Congress passed, and the President signed, the Fair and Accurate Credit Transaction Act ("FACTA") to assist in the prevention of identity theft and credit and debit card fraud. In the statement provided by the President during the signing of the bill, the President declared that:

> This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this

1

ENTERPRISES, LLC, which are vicariously liable for the actions or omissions of Defendant HOOTERS OF HIRAM, LLC.

13.  For the purposes of this Class Action Complaint (hereinafter "Complaint"), the terms "Defendant" or "Defendants" shall mean Defendant HOOTERS OF HIRAM, LLC; Defendant HOOTERS OF AMERICA, INC.; Defendant HOOTERS ENTERPRISES, LLC, and Defendants DOES 1 through 10. Defendants are "person[s] that accept[ ] credit cards or debit cards for the transaction of business" within the meaning of FACTA.

14.  Plaintiff is unaware of the true names of defendants DOES 1 through 10. Said defendants are sued by said fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 10 when the true names are ascertained, or as permitted by law or by the Court.

15.  Plaintiff is informed and believes and thereon alleges that all relevant times each defendant was the franchisor, franchisee, principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each

defendant acted pursuant to and within the scope of the relationships alleged above, that each of the Defendants knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants.

## INDUSTRY KNOWLEDGE REGARDING THE TRUNCATION OF EXPIRATION DATES

16.     In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

17.     On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft. At the press conference, Mr. Pascarella stated:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. ***The card's expiration date will be eliminated from receipts altogether***...
>
> The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.

* * * *

6

> Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. After all, we share the same goals…

On July 9, 2003, L. Richard Fischer, presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, Inc., supporting the truncation requirements of what ultimately became FACTA. Therein, Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from  printing more than the last four digits of the card account number *or the expiration date* upon receipts provided to cardholders at the point of sale…

18.    Visa USA's agreements with the American merchants which accept Visa brand credit or debit cards are defined in part in a manual entitled Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines ("Visa Merchant Rules"). The Visa Merchant Rules Manual includes a description of Visa's truncation requirements. For example, the 2006 edition of the Manual states:

> Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt. After July 1, 2006, *the expiration date*

7

***should not appear at all.*** Existing POS terminals must comply with these requirements by July 1, 2006...

16.    The truncation standards set forth in the Visa Merchant Rules, which are part of the contract between Visa and the merchants which accept its debit and/or credit cards, served as the basis for what ultimately became the truncation requirements of FACTA.

17.    The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA. Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution. The February 2006 Edition of the Handbook states, in relevant part:

**Truncation of Credit and Debit Card Account Numbers**
Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number ***and do not contain the expiration dates.***

18.    FACTA's requirement that merchants truncate credit and debit card expiration dates were phased in over a three year period. During the three year phase-in period, there was extensive publicity regarding the law's requirements, including the following illustrative examples:

19.    Heartland Payment Systems, Inc. ("Heartland") provides credit and debit card, payroll and related processing services to restaurant, hotel and retail

merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> Your credit card terminal is now – or will soon be required by law or the bankcard associations to truncate – or limit – the information that can appear on electronically printed sales receipts.
> What that means is that on all cardholder numbers:
> - The expiration date must be eliminated
> - All but the last four numbers of the card number must be obscured.

20.     In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement: "**Make every transaction a safe one.** The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number."

21.     Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that: "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

22.     In the April 23, 2003 edition of the monthly magazine for the National

9

Association of Convenience Stores, the national trade association for Convenience and Petroleum Retailing, an article titled "Visa USA Targets Identity Theft," appeared and included the following language:

> [A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

23.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language: "[A]ccording to the FACT Act, `no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction..." This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

24.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated:

10

[T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.

Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals…

25.    After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Truncation" Alert to its members, which stated:

You may have been hearing about credit card truncation lately. This is what you need to know.

Credit card truncation removes all but the last four (or five) digits of a credit card account number and the expiration date from the sales receipt. For example: A non-truncated receipt would list: Acct. # 1234 5678 7654 3210 Exp. 10/05 while a truncated receipt would show: Acct. # **** **** **** 3210 Exp ****.

* * * *

The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale…

26.    In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

27.    Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

28.     In the March/April 2006 Edition of the Ohio Independent Automobile

Dealers' Association Dealer News Magazine, an Article was published entitled

"What You Should Know about Credit and Debit Card Processing and the

FACTAs about Card Truncation." The article states:

> What is Card Truncation? This federal law sets deadlines by      which
> the receipt electronically printed from a credit card sale must be
> truncated – meaning, the receipt given to the customer shows no more
> than the last five digits of the customer's credit card number and does
> not show the expiration date. Business owners are responsible for
> merchant account compliance with the truncation regulations and
> must make sure their printed cardholder receipts do not contain
> expiration dates or full account numbers."

This same article appeared in the March/April edition of the West Coast

Independent Automobile Dealer News.

29.     The Independent Insurance Agents & Brokers of America circulated a

report to its members dated June 5, 2005 titled: "Overview of the Fair Credit

Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers

Privacy Protection Act." In relevant part, this publication stated: "Under the FACT

Act, businesses and others accepting credit or debit cards for payment may not

print more than the last five digits of the card number nor may they print the

expiration date upon any receipt provided to the cardholder at the point of sale."

30.     In the November 18, 2004, edition of the Compliance Challenge,

published by the Credit Union National Association News, a report was published

that included the following language: "FACTA prohibits anyone that accepts

credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction…"

31.    In the October 10, 2003, edition of the PT Bulletin, a Newsletter for the American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect for Credit Card Processing." In relevant part, this article stated:

> Physical therapists who accept credit card payments from patients and clients face new processing requirements from major credit card companies. In an effort to minimize opportunities for credit card fraud, Visa and MasterCard… have mandated that credit card account numbers and expiration dates be masked on all receipts. Compliance with this requirement is not optional…

### DEFENDANTS' KNOWLEDGE OF FACTA'S TRUNCATION REQUIREMENTS

32.    Upon information and belief, Defendants had actual knowledge of Visa's truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

33.    Upon information and belief, Defendants had actual knowledge of FACTA's truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

34.     Upon information and belief, Defendants had actual knowledge of multiple state law truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

**THE IMPORTANCE OF TRUNCATING
EXPIRATION DATES**

35.     Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

36.     However, the publication of expiration dates on customer receipts disseminated at the point of sale, *in addition to* the last four or five digits of the customer account number, exponentially increases the possibility of identity theft, which is the obvious reason that Visa, and then Congress, requires the truncation of expiration dates.

14

37.     Contrary to popular perception, credit and debit card account numbers are not randomly generated. Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips. Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier("MII"); (b) an issuer identification number ("IIN"); (c) an account number; and, (d) a check digit.

38.     The MII identifies the industry of the issuer of the card.

39.     The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

40.     The account number consists of the seventh through next to last digit, and must be a maximum of 12 digits.

41.     The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

42.     Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

43.     To the extent that an identity thief is able to decipher a credit or debit card user's account number, the importance of truncating expiration dates becomes manifest. That is, unlike the account number on the credit or debit card, the

15

expiration date cannot be deciphered through sophisticated mathematical modeling. Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

44.     The expiration dates are also used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

45.     Banks and credit card associations (i.e. Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

46.     In addition, a would be identity thief who steals a receipt containing the last four or five digits of a credit card account number *and* an expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

47.     The costs of truncating credit and/or expiration dates and account numbers are *de minimis*.

## **CLASS ALLEGATIONS**

48.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

49.    Plaintiff seeks to represent a class persons to be defined as follows:

With respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that was in use prior to January 1, 2005: all persons to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, on which Defendants printed 1) more than the last five digits of the person's credit card or debit card number, and/or, 2) the expiration date of the person's credit card number; and/or

With respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that was first put into use on or after January 1, 2005: all persons to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after such machine was put into use, on which Defendants printed 1) more than the last five digits of the person credit card or debit card number, and/or, 2) the expiration date of the person's credit card number.

50.    Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of

the individual claims of the respective class members through this class action will benefit both the parties and this Court.

51.    Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the class described above.

52.    The exact size of the class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

53.    Members of the class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by this Court.

54.    Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

55.    Plaintiff and members of the class were each customers of Defendants, each having made a purchase or transacted other business with Defendants at an applicable time using a credit card and/or debit card. At the point of such sale or transaction with Plaintiff and members of the class, Defendants

provided to Plaintiff and each member of the class a receipt in violation of 15 U.S.C. §1681c(g).

56.   <u>Common Questions of Fact and Law:</u> There is a well-defined community of interest and common questions of fact and law affecting members of the class.

57.   The questions of fact and law common to the class predominate over questions which may affect individual members and include the following:

a.   Whether Defendants' conduct of providing Plaintiff and the members of the class with a sales or transaction receipt whereon Defendants printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card violated the FACTA, 15 U.S.C. §§1681 et seq.;

b.   Whether Defendants' conduct was willful; and

c.   Whether Plaintiff and members of the class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendants' acts and conduct.

58.   <u>Adequacy of Representation:</u> Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the

members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

59.   Superiority: A class action is superior to other available means for the fair and efficient adjudication of the claims of the class. While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the class. The likelihood of the individual members of the class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

60.   <u>Disavowal of Unconstitutional Damages</u>. To the extent that any award of class-based statutory damages against Defendants might be adjudicated as violating Defendants' Due Process Rights under the United States Constitution, Plaintiff, on behalf of the putative class she is seeking to represent, expressly requests damages **only** to the fullest extent allowed under the Constitution of the United States.

## FIRST CAUSE OF ACTION

### For Violation of 15 U.S.C. §§1681 *et seq.*

### (On Behalf of Plaintiff and the Members of the Class)

61.   Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

62.   Plaintiff asserts this claim on behalf of himself and the class against Defendants.

63.   Title 15 U.S.C. §1681c(g)(1) provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number <u>or</u> the expiration date upon any receipt provided to the cardholder at the point of sale of transaction.

64.   With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

65.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

66.     Defendants transact business in the United States and accept credit cards and/or debit cards in the course of transacting business with persons such as Plaintiff and the members of the class. In transacting such business, Defendants use cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

67.     On July 19, 2007, after the effective date of the statute, Defendant provided Plaintiff with an electronically printed receipt on which Defendant printed more than the last five digits of Plaintiff's credit card or debit card number and/or the expiration date of Plaintiff's credit or debit card at the point of sale.

68.     Defendants, at the point of a sale or transaction with members of the class, provided, either: a) through use of a machine that was first put into use on or after January 1, 2005, at any time after such date; or b) through any machine at any time after December 4, 2006, each member of the class with one or more electronically printed receipts on each of which Defendants printed, for each respective class member, more than the last five digits of such member's credit card or debit card number and/or printed the expiration date of such member's credit or debit card.

69.     As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

70.     Defendants knew of, or should have known of, and were informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates.

71.     Despite knowing and being repeatedly informed about FACTA and the importance of truncating credit card and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had up to more than three years to comply with FACTA's requirements, Defendants willfully violated and continues to violate FACTA's requirements by, *inter alia*, printing more than five digits of the card number and/or the expiration date upon the receipts provided to members of the class – persons with whom Defendants transacts business.

72.     Most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the

expiration date upon the receipts provided to the cardholders. Defendants could have readily done the same.

73.    In contrast, Defendants willfully disregarded FACTA's requirements and continues to use cash registers or other machines or devices that print receipts in violation of FACTA.

74.    Defendants willfully violated FACTA in conscious disregard of the rights of Plaintiff and the members of the class thereby exposing Plaintiff and the members of the class to an increased risk of identity theft and credit and/or debit card fraud.

75.    As a result of Defendants' willful violations of FACTA, Defendants is liable to Plaintiff and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation. 15 U.S.C. §1681n(a)(1)(A).

76.    As a result of Defendants' willful violations of FACTA, Plaintiff and the members of the class are entitled to recover costs of suit and their reasonable attorneys' fees. 15 U.S.C. §1681n(a)(3).

77.    As a result of Defendants' willful violations of FACTA, Plaintiff and the members of the class are entitled to recover punitive damages. 15 U.S.C. §1681n(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

      a.     An order certifying the class and appointing Plaintiff as the representative of the class, and appointing counsel for Plaintiff as counsel for the class;

      b.     An award to Plaintiff and the members of the class of statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A) for Defendants' willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

      c.     An award to Plaintiff and the members of the class of punitive damages pursuant to 15 U.S.C. §1681n(a)(2)(up to but not exceeding the fullest extent allowed under the Constitution of the United States);

      d.     Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3);

      e.     Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3);

      f.     A trial by jury on all issues so triable; and

      g.     Such other and further relief as the Court may deem proper.

Respectfully submitted this 17th day of August, 2007.

_____

Anthony Lake, Esq.
Georgia Bar No. 431149
Thomas A. Withers, Esq.
Georgia Bar No. 772250
GILLEN PARKER & WITHERS, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:    (404) 842-9750
E-mail:        aclake@gcpwlaw.com
                     twithers@gcpwlaw.com

Of Counsel:

R. Bruce Carlson, Esq.
Gary F. Lynch, Esq.
Stephanie K. Goldin, Esq.
CARLSON LYNCH LTD
231 Melville Lane
P.O. Box 367
Sewickley, Pennsylvania 15143
Telephone:  (412) 749-1677
Facsimile:  (412) 749-1686
E-mail:        bcarlson@carlsonlynch.com
                     glynch@carlsonlynch.com
                     sgoldin@carlsonlynch.com

*Counsel for Plaintiff Cory M. Cone*

## <u>CERTIFICATION</u>

The undersigned hereby certifies, pursuant to Local Rule 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1B.

This 17th day of August, 2007.

Anthony Lake, Esq.
Georgia Bar No. 431149
GILLEN PARKER & WITHERS, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:   (404) 842-9750
E-mail:      aclake@gcpwlaw.com
             twithers@gcpwlaw.com

*Counsel for Plaintiff Cory M. Cone*

27